# THE STATE v. BULLOCK.

1. An indictment need not conform to the exact words of a statute, creating the offence. It is sufficient if the words used in the indictment descriptive of the offence, are equivalent to those used in the statute.

2. An indictment charging that the prisoner, " with a certain large knife, which he then and there had and held, at and against the body of the said H. W. R., then and there did cut, thrust, and stab, with the intent him the said H. W. R. then and there, feloniously, wilfully, and of his malice aforethought, to kill and murder," sufficiently states that the intent to commit the act was by the use of the weapon described.

3. Although drunkenness reduces a man to a state of temporary insanity, it is no excuse for crime which is the immediate result of it. So, upon a trial for an assault with intent to murder, it is not error for the court to

charge the jury, that the drunkenness of the prisoner should have no effect upon their consideration.

Error to the Circuit Court of Shelby County. Before the Hon. G. D. Shortridge.

THE prisoner was indicted in the circuit court of Shelby county, for an assault with intent to kill and murder one Henry W. Robertson. The indictment, after stating the assault made by defendant, in the usual form, proceeds, "that the said James Bullock, with a certain large knife which he the said James then and there had and held, at and against the body of the said Henry W. Robertson, then and there did cut, thrust, and stab, with the intent him, the said Henry W. Robertson, then and there, feloniously, wilfully, and of his malice aforethought, to kill and murder." The defendant was found guilty by the jury, and sentenced by the court to five years' imprisonment in the penitentiary.

It appears, from a bill of exceptions taken upon the trial, that the prisoner, and the person on whom the assault was alledged to have been committed, were both deeply intoxicated at the time of the commission of the offence, with spiritous liquors. The prisoner's counsel asked the court to charge the jury, " that although drunkenness does not incapacitate a man from forming a premeditated design of murder, yet, as drunkenness clouds the understanding and excites passion, it might be evidence of passion only, and of a want of malice and design." This charge, the circuit court refused to give, but charged the jury, that drunkenness could have no effect in their consideration. The prisoner moved to arrest the judgment, alledging defects in the indictment, which motion the court overruled. He then insisted, that the offence charged in the indictment was a common law and not a statutory offence, and that the punishment was fine, and imprisonment in the common jail, and not confinement in the penitentiary, which also being overruled by the court, the prisoner excepted, and now assigns for error—1. The refusal of the court to give the charge asked, and in the

charge given.    2. The refusal of the court to arrest the judgment; and  3. The sentence to the penitentiary.

PECK and BRYSON, for the prisoner, made the following points:    1. The court should have given the charge asked, that although drunkenness does not incapacitate a man from forming a premeditated design to murder, yet as it clouds the understanding, and excites passion, it may be evidence of passion only, and of want of malice and design.    The State v. McFall, Addison's Rep. 257; Kelley & Little v. The State, 3 Smedes & Mar. Miss. R. 518.    That drunkenness is distinguished into three kinds—1. Intentional—voluntarily induced in order to the commission of a crime while in that state.   2. Culpable—as drinking without any intention to become drunken, but where the party might easily have foreseen that he would naturally become so.   3. Inculpable—where such consequence would not easily have been foreseen, or the party took due precaution against any such injurious effects, or where the drunkenness was justly attributable to others, or the result of disease.    That, in the first, it is no excuse; in the second, it reduces the design of criminality and mitigates the punishment; in the third, the liability to punishment ceases.    Mithemaer on the Effects of Drunkenness on Criminal Responsibility, § 6, 7, 8, 9.    2 Greenl. Ev. 304.

2. That the indictment was bad, because it did not state the intent to commit the act was by the use of the instrument described.    1 Russell, 557.

3. That the offence charged is not provided for in the penal code, which affixes punishment in the penitentiary as the sentence against any person who shall be guilty of an assault with an attempt to murder, &c.    The indictment charges the assault with intent to murder.    The two offences are different: intent, means design—attempt, is an actual effort to carry some design into execution.    Intent, is a mental, attempt, a physical act.    1 Russell, 552, 553, 555.

NOOE, contra, insisted that drunkenness was no excuse for crime, and that were the law otherwise, the most flagrant breaches of the criminal law might go unpunished under the

cover which it would afford. That the indictment conformed substantially to the requisitions of the statute, and the sentence imposing imprisonment in the penitentiary was consequently correct.

CHILTON, J.—1. Before considering the propriety of the charge asked and refused, and that given, by the court, let us examine as to the sufficiency of the indictment. The statute under which it is framed, declares, "every person who shall be guilty, and be thereof convicted, of an assault with an attempt to murder, &c. shall be punished by imprisonment in the penitentiary, for a term not less than two, nor more than twenty years." Conceding the law to be well settled, that all penal statutes must be strictly construed, yet it does not follow, that an indictment for a statutable offence should follow the exact wording of the statute. It is in general sufficient that the offence be set forth with substantial accuracy and certainty, to a reasonable intendment. United States v. Batchelder, 2 Gallis. 15. Nor will a variance between the language of the statute creating the offence, and the indictment vitiate, if the words used in the indictment are equivalent to those used in the statute. State v. Hickman, 3 Halst. 299; 8 Bacon's Abr. Bonner's ed. 88.

Applying these principles to the case before us, we think this indictment does substantially charge the offence described in the statute. It is true, as contended for by the counsel for the prisoner, that there is a marked difference between the terms "*intent*" and "*attempt* to kill and murder," &c. But while this difference exists in the terms taken separately, the distinction is lost, when we consider them in the connection in which they occur in the statute, and in the indictment. An assault implies an attempt to do the violence; and the intent to murder, characterizes the criminality of the act. An assault with an attempt to murder, implies nothing less; so we conclude, the indictment contains a sufficient description of the statutory offence.

2. But it is contended that the indictment does not state that the intent to commit the act, was by the use of the weapon described in it. We regard this objection as untenable. The indictment charges that the prisoner, with a large knife

which he then and there had and held at, and against the body of the said Henry W. Robertson, then and there, did cut, thrust and stab, with the intent then and there feloniously, &c. to kill and murder. It is insisted that the indictment should have read thus : " then and there, and *thereby*, &c. We think such strictness not now required, and that, although the indictment thus framed would accord more nearly with the ancient form, when, according to Lord Hale, such niceties had grown to be a blemish and inconvenience in the law, (2 Hale, 193;) yet the tendency of modern decisions is to overlook technical objections, that the great ends of society may not be defeated in the punishment of those who offend against the law. We think it clear that the indictment is sufficiently certain, and that the circuit judge very properly overruled the motion in arrest of judgment.

3. This brings us to the consideration of the remaining point in this case, which is one of more difficulty—the charge asked by the prisoner's counsel, and refused by the court. The court was asked to charge as a matter of law, that although drunkenness did not incapacitate a man from forming a premeditated design of murder, yet that as drunkenness clouds the understanding, and excites passion, it might be evidence of passion only, and of a want of malice and design." It is a general rule, too well established by an unbroken chain of authority to be now controverted, that although drunkenness reduces a man to a state of temporary insanity, it does not excuse him or palliate his offence committed in a fit of intoxication, and which is the immediate result of it. Lord Coke, in his classification of persons *non compos*, includes him who is drunk, but adds, that he is so far from coming within the protection of the law, that his drunkenness is an aggravation of whatever he does amiss. Co. Lit. 247; Bac. Ab. tit. Idiots and Lunatics, A. This rule, however, which went so far as to deny to the unfortunate inebriate the right to avoid his contracts superinduced by intoxication, has been greatly relaxed by subsequent decisions, more in accordance with the dictates of justice and common sense. 4 Kent, 451. Yet the rule, that drunkenness shall not excuse, or even palliate crime, has not, so far as we are advised, been departed

53

from.   It is insisted by the prisoner's counsel, that although drunkenness does not excuse or justify the offence, yet it may be evidence of passion only, and want of malice.   It is certainly true, that there must be malice, either express or implied, to constitute the offence charged in the indictment, and any circumstance calculated to disprove its existence, was proper to be considered by the jury.   Malice may be inferred from the deadly character of the weapon used in the commission of the act.   Would the legal presumption, deducible from the use of such weapon, be rebutted by the fact that the party was intoxicated?   Suppose the prisoner, in a state of intoxication, with a large knife, such as was calculated to produce death, had, without provocation, assaulted and slain his victim, would it, at common law, have been a sufficient plea to an indictment for murder, that he was drunk?   If so, then drunkenness would excuse the crime of murder.   But we have seen that it is no excuse for crime. If, then, in the present case, had the prisoner killed Robertson with the deadly weapon with which he stabbed him, the crime would not have been reduced from murder to manslaughter by reason of his intoxication, it follows that the court did not err in refusing the charge asked for, and in charging the jury, that the drunkenness of the prisoner (which we must presume, in the absence of proof to the contrary, was voluntary) should not be considered by them.   The authorities referred to by the counsel for the prisoner, we apprehend, do not conflict with the views here expressed.   In the case of Pennsylvania v. McFall, Adds. R. 257, the law, as applicable to murder in the first degree, as defined by a statute of that State, is laid down as contended for by the counsel for the prisoner.   So, also, in the case of Swan v. The State, 4 Humphreys's Tenn. Rep. 136, the point is similarly ruled.   In these cases it became important to ascertain whether the homicide was of that "kind of *wilful, deliberate, malicious and premeditated killing*," which, by the provisions of the statute, constituted the crime of murder in the first degree, as contradistinguished from murder in the second degree.   The question involved, was the *mental status* at the time of the commission of the act, and with reference to it.   Was it one of fixed purpose, by deliberation and pre-

meditation, to take the life of the deceased? The mental state required by the statute to constitute the crime, was one of deliberation and premeditation, hence drunkenness, which excluded such condition of the mind as was necessary to constitute the statutory offence, was allowed to be considered by the jury, not as an excuse for the crime, but to show it had not been committed. Indeed, the court in the last case referred to, assert that drunkenness is no excuse or justification for any crime. Without intending to intimate what would be our decision, should a similar case arise under our statute, which is somewhat similar to those above mentioned, we are satisfied that these decisions do not apply to the case before us. Whether the offence committed, was the result of a pre-conceived determination to kill and murder, or was induced by the voluntary intoxication of the prisoner, he is nevertheless guilty, and must suffer the penalty denounced by the statute against such as violate its provisions.

Let the judgment of the circuit court be affirmed.