11296.   Belcher *v.* The State.

Luke, J.  1.  Under the prohibition law (Ga. L. Ex. Sess. 1917, p. 18) declaring it a felony to "distill, manufacture, or make any liquors or beverages, any part of which is alcoholic," the act of making an intoxicating beer, through the fermentation of syrup, corn-meal, and water mixed for that purpose, is of itself an offense as complete and distinct as the further act of distilling from such beer a quantity of alcohol, whisky, or rum. *Williams* v. *State,* 24 *Ga. App.* 53 (2) (99 S. E. 711).

(*a*) The failure of the evidence in this case to show the distillation of any quantity of whisky does not, therefore, leave the conviction of the accused without any evidence to show that he was guilty of making such beer, and the indictment is broad in its terms to include all possible violations of the above-named statute.

(*b*) In so far as the court's instructions to the jury differ from the fore-
going rulings, the excerpt complained of was more favorable to the
accused than he had any right to demand. Therefore it cannot be
cause for a new trial.

2. Those grounds of the motion for a new trial which complain of the
court's instructions to the jury on the defense of alibi are, on their
facts, controlled by the decisions of this court in *Bass* v. *State*, 1
*Ga. App.* 729 (4) (57 S. E. 1054), and of the Supreme Court in *Shaw*
v. *State*, 102 *Ga.* 660 (3) (29 S. E. 477).

3. The evidence authorized the verdict, and no error of law appears.
       *Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED JULY 15, 1920.

Indictment for manufacture of liquor; from Jasper superior
court — Judge Park. January 6, 1920.

1. The indictment charged William Belcher with "the offense
of a felony, for" he "did unlawfully distill, manufacture and
make spirituous liquors, malted liquors, mixed liquors and bever-
ages, a part of which is alcoholic." The judge charged the jury:
"If you believe that there was evidence that there was an appa-
ratus for the manufacture of liquor prohibited by law, and . .
a barrel of beer which fermented and was alcoholic and would
produce intoxication was found at the place, and if you further find
that the defendant was connected with the manufacture of liq-
uor if any liquors were manufactured, you would be authorized
to convict the defendant." In the motion for a new trial it is
alleged that this part of the charge was erroneous, because: (*a*)
it was not authorized by the evidence; (*b*) it was error to instruct
the jury that they would be authorized to convict if the defendant
was "connected with the manufacture of liquor;" for he may
have been connected with the manufacture as an accessory, and
such connection would not have made him guilty of the offense
of manufacturing liquor; (*c*) it failed to state the nature and
kind of connection that he must have with the manufacture, in
order to authorize a conviction of the offense charged in the in-
dictment.

From the evidence it appears that persons searching for a still
saw the defendant carrying wood to a still in a gully in a pine
thicket, near a branch, about a quarter or half mile from his
house, and saw him throw the wood down at the still; that he
then looked up, and, seeing that he was observed, ran off; that they
found an old gasoline tank with water in it, heated up, with

a wood fire at the side of the tank; and found a barrel and a doubling keg, a worm and connecting pipes, and a trough in which there was water. The witnesses saw another man there. One of the witnesses testified: "In that keg there was something they call beer or slops, and about six barrels of beer away from that; it had not begun to run then. I don't know whether the contents of the barrel had ever been distilled one time or not; it was in a state of fermentation, and I don't know the practice of stilling well enough to know. It had a sour smell,— syrup, shorts, and meal mixed up. . . We did not find any whisky there at all. It had just started up, about ready to boil. . . Smoke was in the gully; . . the fire seemed to have been burning 15 or 20 minutes; they seemed to be about to make a run." Another witness testified: "We found a whole lot of beer and stuff in barrels, about seven or eight barrels of beer — fourteen barrels in all. I think seven were full. In these barrels was a mash made of water and wheat bran and shorts and syrup. . . We did not find any whisky there." These two witnesses were the only ones who testified as to what was found at the still.

2. As to alibi the charge of the court was as follows: "The defendant in this case also sets up what he calls a plea of alibi. And in this connection I read you section 1018 [Penal Code]: 'Alibi, as a defense, involves the impossibility of the prisoner's presence at the scene of the offense at the time of its commission; and the range of evidence, in respect to time and place, must be such as reasonably to exclude the possibility of presence.' I charge you that when the defendant sets up a plea of alibi the burden of proof is upon the defendant to establish to the satisfaction of the jury the truthfulness of such a plea. And if the range of the evidence in this case upon the plea of alibi is sufficient to reasonably exclude the defendant's presence at the time and place of the commission of the offense, if any has been committed, the plea of alibi would be good." In several grounds of the motion for a new trial the instructions as to alibi were complained of as being incomplete, and it was contended that the court erred in not charging that the testimony introduced by the defendant as to alibi should be considered along with the other evidence in the case, and if, after having considered all the evidence in the case, the jury were not morally and reasonably satisfied of the

defendant's guilt, he would be entitled to an acquittal; and that if the jury had a reasonable doubt as to whether the defendant had in fact established an alibi, he should be given the benefit of the doubt and should be acquitted.

*Greene F. Johnson,* for plaintiff in error, cited: 52 *Ga.* 287; 132 *Ga.* 237, 240; 17 *Ga. App.* 121, 311; 24 *Ga. App.* 53 (2), 239; 14 *Ga. App.* 442.

*Doyle Campbell, solicitor-general,* contra, cited: 1 *Ga. App.* 728, 729 (4); 102 *Ga.* 660 (3).