31904. SUMMERVILLE *v.* THE STATE.

DECIDED MAY 13, 1948.

*Claude V. Driver, Emmett Smith,* for plaintiff in error.

*Hal C. Hutchens, Solicitor-General,* contra.

MacIntyre, P. J. "Under the prohibition law (Ga. L. Ex. Sess. 1917, p. 18) declaring it a felony to 'distill, manufacture, or make any . . liquors or beverages, any part of which is alcoholic,' the act of making an intoxicating beer, through the fermentation of syrup, corn meal, and water mixed for that purpose, is of itself an offense as complete and distinct as the further act of distilling from such beer a quantity of alcohol, whisky, or rum. *Williams* v. *State,* 24 *Ga. App.* 53 (2) (99 S. E. 711)." *Belcher* v. *State,* 25 *Ga. App.* 493 (1) (103 S. E. 852). Therefore, it was necessary here to prove only the making of the intoxicating beer through fermentation, and it was unnecessary to prove any further act of distillation from such intoxicating beer of a quantity of alcohol or whisky. The jury were authorized to find that on January 26, 1947, the liquor or beverage was at the still "site" and "was about ready to run"—that is, that it was about ready to be placed in the still and further distilled into whisky or alcohol; that on January 27, 1947, when the officers approached the place where the alcoholic liquor had been fermenting, the beverage "was ready to run"—in other words, the beverage had on said January 27, 1947, reached that stage of fermentation which made it an intoxicating beverage; that the defendant and a codefendant were fixing and connecting some part of the distilling apparatus in the part of the branch in the swamp which had been dammed up for use in further distilling the intoxicating beer into whisky; that the two other codefendants were working around the still; that the defendant here, Preston Summerville, and his three codefendants had put the intoxicating beer into the still, had warmed it up, and were preparing to commit the further act of distilling from such beer alcohol or whisky; that one of the codefendants, Junior South, was returning to the still with some pipe and was intercepted and caught by one of the officers; that thereupon another officer, W. P. Mann, "shot a signal;" that two of the codefendants, Allen Swann and Ollie Alred, ran; that the defendant Summerville, got around out of

Officer Mann's sight and unknowingly went in the direction of Officer Lambert, who was approaching the still from that direction; that the defendant left the still and came directly toward Lambert and came out of the edge of the swamp, stepped out on a high place, and Lambert spoke to him and told him not to run, and they met; that the defendant "was somewhat excited and his shoes were wet and his pants were up half way to his knees and wet;" and that when Lambert said something to him, he first began to try to explain to Lambert why he was over there and that he said he had just come across the woods and was on his way home.

The sheriff testified in substance: that they destroyed the distillery, which was about a six or eight hundred gallon tank type zinc still, and apprehended four men; that they caught Allen Swann, Ollie Alred, Preston Summerville, and Junior South; that he saw three of those men and they were arrested; that he later saw Preston Summerville, "but it was quite a while before he could see him on this; that they left a bond at his house for him to sign on this charge; and that although it was quite a while before he got to see Summerville, he finally saw him and got a bond from him."

The defendant in his statement to the jury said that he was not working around the still on the occasion in question, but was merely passing by the still on his way home and was not guilty of the crime as charged. His three codefendants, who had pleaded guilty, testified that the present defendant, Summerville, had no part in working around the still on this occasion and had no connection with the transaction in question. This was contradicted by the testimony of the officers who raided the still when they testified in effect that there were four men working around the still and that the defendant Summerville was one of them, and that one of the men was working in the dammed up branch connecting up a part of the distilling apparatus which they were preparing to put in operation immediately.

Subject to certain exceptions which are not here applicable, "one answerable for a criminal transaction may be holden for any crime, of whatever nature, which can be legally carved out of his entire offending. He is not to elect, but the prosecuting power

is. If the evidence shows him to be guilty of a higher offense than he stands indicted for, or of a lower, or of one differing in nature, whether under a statute or at the common law, he cannot be heard to complain,—the question being whether it shows him to be guilty of the one charged." Bishop's *New Criminal Law*, Vol. 1, p. 478, § 791. While the evidence of the transaction here was not sufficient to authorize the finding of a distilling of whisky, and even though it was sufficient to authorize a conviction of the defendant and his three associates for an attempt to distill whisky by using the intoxicating beer in question, they (the defendant and his associates), being answerable for a criminal transaction may be holden for any crime, of whatever nature (here the making of the intoxicating beer in question), which can be carved out of the entire offending.

Whoever made this intoxicating beer, which was found, hot but not "running," in the whisky still around which the defendant, Summerville, and his three codefendants were working and in which whisky still they were preparing "to run" such beer, was guilty of making such intoxicating beer by fermentation and guilty of a crime if nothing more had been done. Who then made this beer that was about to be distilled into whisky? We think that the jury were authorized to find that the defendant, who fled upon the approach of the officers, and his three codefendants were not only in the possession of the intoxicating beer, but also that all four of them had participated in the making of such intoxicating beer for the very use to which they were then attempting to put it. *Smith* v. *State*, 43 *Ga. App.* 223 (2) (158 S. E. 365) ; *Lindsay* v. *State*, 32 *Ga. App.* 74 (3) (122 S. E. 649). In short, the jury were authorized to find that the entire criminal offending was the attempt to distill whisky, that the making of the intoxicating beer was a part of the whole criminal transaction in which the defendant and his three codefendants participated, and that he and his three codefendants aided and abetted each other in the making of the beer, a crime which could be carved out of the entire criminal offending.

We think that this case is controlled on its facts by *Belcher* v. *State*, 25 *Ga. App.* 493 (supra). Applying the rule there stated to the evidence in the instant case, the jury were authorized to

find the defendant guilty of making an intoxicating beer by fermentation as charged in the indictment. There was no error in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*